## In re CHICAGO, M., ST. P. & P. R. CO.
### Nos. 8658, 9, 8660, 1, 2.

Circuit Court of Appeals, Seventh Circuit.

Oct. 31, 1944.

300

See, also, 131 F.2d 214; 138 F.2d 235.

Stanford H. E. Freund, of New York City, Irving Herriott and W. Ward Smith, both of Chicago, Ill., F. C. Nicodemus, Jr., of New York City, John F. Rich, of Boston, Mass., Benjamin Wham, of Chicago, Ill., Robert H. McRoberts, of St. Louis, Mo., Walter S. Underwood, of Chicago, Ill., John L. Hall and James Garfield, both of Boston, Mass., and Helen W. Munsert, of Chicago, Ill., for appellant.

Meyer Abrams, A. N. Whitlock and M. L. Bluhm, all of Chicago, Ill., Kenneth F. Burgess, Douglas F. Smith, and Geo. Ragland, Jr., all of Chicago, Ill., and Fred N. Oliver and Willard P. Scott, both of New York City, for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

We have for decision a motion to docket and dismiss certain appeals filed herein July 29, 1944, from an order entered by the District Court June 30, 1944, approving the modified Plan of Reorganization for the debtor railroad corporation, as certified by the Interstate Commerce Commission in its third supplemental report and order dated April 10, 1944. The reorganization proceeding was instituted by the debtor on June 29, 1935, under § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, and in the interim has been much litigated before the Commission and the courts. The Plan originally promulgated by the Commission was approved by the District Court October 21, 1940 (36 F.Supp. 193). From that approval, numerous parties appealed to this court, where the Plan was in part reversed and in part affirmed (7 Cir., 124 F.2d 754). Our decision was reviewed by the Supreme Court, which by its opinion of March 15, 1943 (Group of Institutional Investors et al. v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959), reversed in part and affirmed in part the judgment of this court and remanded the proceeding to the District Court for action in conformity with its opinion.

The history of the Plan, together with the numerous objections which have been made to its validity, thus being so voluminously recorded, there is no occasion for any statement or discussion further than that required to dispose of the instant motion. The appeals are by the debtor and certain junior creditors and their representatives.[1] The motion to docket and dis-

[1] Chicago, Milwaukee, St. Paul & Pacific Railroad Company, debtor; St. Louis Union Trust Company and Illinois State Trust Company, as trustees under Chicago, Milwaukee & Gary Railroad Company first mortgage; National City Bank of New York and William W. Hoffman, as trustees under the Debtor's adjustment mortgage; Darragh A. Park, as chairman of a group of adjustment mortgage

miss is by the Group of Institutional Investors and the Mutual Savings Bank Group, referred to as senior creditors. In connection with the motion is presented a "short record," which includes the order of the Commission and the opinion and decree of the District Court (from which the appeals were taken), approving the modified Plan.[2]

Appellants have filed their several answers to the motion to dismiss, attacking the validity of the Plan in numerous respects. The basis of appellees' contention in support of the motion is that the Commission and the court acted in conformity with the opinion and mandate of the Supreme Court, and, having so acted, no reviewable question is presented. In this connection, it is urged that numerous matters sought to be raised have heretofore been decided either by the opinion of the Supreme Court or by the opinion of this court. If appellees' position in this respect be sound, it would seem to follow that the appeals should be dismissed. We do not understand that the creditor appellants take issue with this premise, but they contend that changes were made in the Plan beyond the scope of the Supreme Court's ruling. It may be that the primary question raised by the debtor is in a different category, although we think such difference is more fanciful than real, as we shall hereinafter point out. We also note that a question is raised as to the right of the court to change the Plan so as to provide for approval of the voting trustees by the court rather than by the Commission.

This brings us to a consideration of the Supreme Court's opinion. Without entering a detailed discussion of that opinion, it is sufficient to state our conviction that every feature, except two, of this complicated Reorganization Plan was approved by the Supreme Court and all controversy with reference thereto definitely laid to rest. After discussion and decision of the many objections raised, the court (page 568 of 318 U.S., page 750 of 63 S.Ct., 87 L.Ed. 959) stated: "There are, however, two objections made by the General Mortgage bonds (senior creditors) which we think have merit. The first of these relates to the dispute as to the so-called 'pieces of lines east.' * * * The sec-

ond of these objections is that the General Mortgage bonds are to receive under the plan only a face amount of inferior securities equal to the face amount of their claims." The court proceeds to discuss and decide these two objections favorably to the senior creditors. The opinion then concludes: "We have considered all other objections to the plan and find them without merit. But for the exceptions we have noted, we conclude that the District Court was justified in approving the plan * *." Thus it will be noted that, but for the two objections decided in favor of the senior creditors, every feature of the Plan was approved, not only those specifically discussed and decided but "all other objections" as well.

The first objection related to the allocation of liens and the District Court was directed (page 569 of 318 U.S., page 751 of 63 S.Ct., 87 L.Ed. 959) to resolve the dispute. This was done by the District Court and approved by the Commission. No question is now raised as to the propriety of the court's action in this respect.

The court (commencing on page 569 of 318 U.S., on page 751 of 63 S.Ct., 87 L.Ed. 959) discusses the merits of the second objection and concludes, in conformity with its previous decisions, that senior creditors, where junior creditors are permitted to participate in the Plan, are entitled to be compensated for their senior rights. The court held that the senior creditors were not accorded such treatment in the instant proceeding. Then follows the language which constitutes the real heart of the instant controversy. On page 571 of 318 U.S., on page 752 of 63 S.Ct., 87 L.Ed. 959, the court stated: "But neither the Commission nor the District Court considered the problem. As we have indicated, the question whether senior creditors have received 'full compensatory treatment' rests in the informed judgment of the Commission and the Court. A decision on that issue involves a consideration of the numerous investment features of the old and new securities and a financial analysis of many factors. Our task is ended if there is evidence to support that informed judgment. We are not equipped to exercise it in the first instance. Nor is it our function. * * * Our conclusion

---

bondholders; and Hubert F. Atwater, et al., as a protective committee for the holders of adjustment mortgage bonds.

[2] Subsequent to the filing of the motion to docket and dismiss, the appeals were perfected. The complete record was filed September 19, 1944, so the motion is merely one to dismiss appeals.

on the point is that, since junior interests are participating in the plan, the Commission and the District Court should determine what the General Mortgage bonds should receive in addition to a face amount of inferior securities equal to the face amount of their old ones, as equitable compensation, qualitative or quantitative, for the loss of their senior rights."

When the proceeding found its way back to the Commission, a large amount of cash had accumulated from the operation of debtor's railroad system, and the Commission ordered the distribution of some $52,000,000 of this cash to senior creditors as compensation for the loss of senior rights which had become merged in the Plan. To do this, it was thought necessary to change the effective date of the Plan from January 1, 1939 to January 1, 1944, and such change was effected. As we understand, the senior creditors were entitled to contract interest only to the effective date of the Plan, and the cash distribution directed would be the substantial equivalent of the contract rate during the five year period created by changing the effective date. The action of the Commission in this respect was approved by the District Court.

No contention is made but that the action of the Commission, approved by the court, is supported by evidence. The essential attack upon the Commission's order is that it was without authority to change the effective date of the Plan because not within the purview of the remandment. This involves a construction of the Supreme Court's direction to the Commission and the District Court. We know of no reason why a decision in this respect cannot be made now as well as at some future date. In other words, we are unable to perceive how any further light could be shed upon this controversy by permitting the appeals to stand.

Of course, it is true no doubt, as argued by the junior creditors, that they will be injured by the payments directed to be made to the senior creditors. It appears, however, that the same argument could be made against any provision for compensating such creditors. At any rate, we know of no way by which senior creditors could be awarded additional compensation without adversely affecting other creditors. When in a proceeding of this character the financial position of one group is enhanced, it necessarily must be at the expense of some other group. We are of the view that the Commission acted not only within the authority but under the direction of the Supreme Court. Certainly it was clothed with the implied authority to do that which was directed. The method it employed to comply with such direction was the changing of the effective date of the Plan.

In this connection, it is interesting and perhaps pertinent to note that § 77, sub. *l*, rather plainly provides that the date of filing of the debtor's petition shall be the effective date of the Plan. However, in Ecker et al. v. Western Pacific Railroad Corp. et al., 318 U.S. 448, page 510, 63 S.Ct. 692, page 724, 87 L.Ed. 892, the court, in response to a challenge that the Commission was without power to fix some other date, stated: "But we are of the opinion that the provisions of subsection (b) are sufficiently broad to empower the Commission to select the date for the institution of the reorganization." In the instant case, the Supreme Court held to the same effect (page 546 of 318 U.S., page 740 of 63 S.Ct., 87 L.Ed. 959). The court was content with deciding that the Commission had the power, without discussion as to the reason for its action, and we think it may be strongly implied that the court recognized the exercise of such power as final. The court having held, notwithstanding the statutory provision referred to, that the Commission was empowered to fix an effective date, it would seem to follow that the Commission was empowered in the instant case to change the date to such time as in its judgment was necessary to meet with and carry out its directions from the court. We are inclined to the view that no reviewable question is presented, but whether so or not, we are certain that we would be compelled to hold that the Commission was empowered to make the change.

Certain other questions are raised as to other minor changes made by the Commission, necessitated by the provision adopted for compensating senior creditors. We think they need not be discussed. They fall within the same category as the Commission's change in the effective date of the Plan, and what we have said and concluded with reference to the latter provision is applicable.

The debtor resists the motion to dismiss on the ground that it was denied a hearing on the value of its property, which it contends has greatly increased

since the approval of the original Plan and even since the decision of the Supreme Court. When the proceedings were referred back to the Commission after the Supreme Court's decision, the debtor petitioned the Commission to reconsider the Plan on the basis of an increase in property value. The Commission received evidence as to the debtor's earnings up to the time of the hearing, with an estimate for the remainder of 1943. The Commission refused to change the Plan, which refusal was approved by the District Court. The debtor heretofore, both before this court and the Supreme Court, has urged that changed circumstances required that the Plan be referred back to the Commission for reconsideration. In response to this contention, the Supreme Court (page 543 of 318 U.S., page 739 of 63 S.Ct., 87 L.Ed. 959) said: "We agree with the Circuit Court of Appeals that no sufficient showing of changed circumstances has been made which requires the District Court to return the plan to the Commission for reconsideration."

The Supreme Court had before it the net earnings for 1940 and 1941, which disclosed that such earnings for the latter year were almost twice as much as for the former. The debtor seeks to evade this apparently conclusive pronouncement of the Supreme Court by arguing that it is entitled to a hearing, not on increased net earnings but on the increased worth of its assets in connection with a decreased amount of its liabilities. We think this is a distinction without any real difference, for it would appear that the increase in the value of its assets and the decrease in the amount of its liabilities were the direct result of its increased earnings. However, the Supreme Court, in its discussion of the criterion to be applied in determining value for reorganization purposes, has definitely determined that it is the earning power. The court said (page 540 of 318 U.S., page 738 of 63 S.Ct., 87 L.Ed. 959): "The basic question in a valuation for reorganization purposes is how much the enterprise in all probability can earn. * * * Certainly there is no constitutional reason why earning power may not be utilized as the criterion for determining value for reorganization purposes."

The Supreme Court, in agreeing with this court that the debtor was not entitled to a further hearing because of the alleged changed situation, discusses debtor's experience during and following the first World War, and states (page 543 of 318 U.S., page 739 of 63 S.Ct., 87 L.Ed. 959): "We cannot assume that the figures of war earnings could serve as a reliable criterion for that 'indefinite future.'"

We are of the view that the District Court properly refused to refer the proceeding to the Commission for the purpose of considering further a valuation theretofore determined and approved by the Supreme Court. Conceivably a situation might arise in a proceeding of this character wherein a party might be entitled to be heard on account of a changed condition, but in view of what the Supreme Court has said in this and other cases, we think clearly that no such situation is presented. Furthermore, the debtor seeks to circumvent the test of increased net earnings which the Supreme Court has prescribed and relies upon the alleged increased value of assets and the decreased amount of liabilities. In this connection, it is pertinent to observe that a memorandum taken from the record was handed to the court during oral argument, which discloses debtor's revenue and expenses for the years 1943 and 1944. While there was an increase in the amount of operating revenue in 1944 over the same period in 1943, there was a marked decrease in the net income for 1944, due to the greatly increased cost of operation. This situation is corroborative of the Supreme Court's prophetic discussion (pages 543, 544 of 318 U.S., pages 739, 740 of 63 S.Ct., 87 L.Ed. 959) as to what is likely to happen in a normal year.

The modified Plan provides for the creation of a voting trust consisting of five trustees, and designates the groups or parties by whom such trustees are to be selected. It provides that upon a failure to designate by such groups or parties designation shall be made by the court. The Plan then provides, "The designation of any and of all of the voting trustees shall be subject to the approval of this Commission." This provision was inserted by the Commission for the first time. The court altered it by providing that approval of such voting trustees be by the court rather than by the Commission. It is here contended that this alleged alteration by the court requires that the Plan be sent back to the Commission, and that this court should so direct. No question is raised but that the court is as well equipped

to approve such trustees as the Commission, or that any party will be aggrieved by such approval.

■ We have serious doubt that the Commission was authorized for the first time to insert this requirement in view of the limited scope of its authority, following the Supreme Court's opinion, heretofore discussed. Furthermore, we are doubtful if this requirement is in fact a part of the Plan of Reorganization. Certainly its operation or execution is not dependent in any degree upon whether the trustees are approved by the court or by the Commission. It can be more aptly described, so we think, as a part of the mechanics by which the Plan is to be consummated. We are of the view that this change by the court did not alter the Plan so as to require a re-reference to the Commission. In any event, it would border on the absurd, under the circumstances presented, to send this matter back to the Commission for this alleged defect which has no bearing upon the substance of the Plan or the rights of the parties. We shall not do so.

■ We are of the opinion that the appeals should be dismissed. In reaching this conclusion, we are not unmindful that parties are ordinarily entitled to have their cases reviewed on the merits. We are not presented, however, with an ordinary situation; in fact, it is extraordinary. The proceeding has been pending for more than nine years. As the Supreme Court in the instant case said (page 545 of 318 U.S., page 740 of 63 S.Ct., 87 L.Ed. 959), "We cannot conclude that in this proceeding, * * * the interests of junior claimants have been sacrificed for speed." We are satisfied, as has so often been emphasized, that the public interest requires that there be no further delay. We think the motion to dismiss should be allowed on the ground that the modified Plan conforms to the opinion and mandate of the Supreme Court, in which event there is nothing to review. However, we recognize, as our opinion indicates, the difficulty of thus limiting our discussion. In other words, it is not easy to establish the precise boundary line between that which is in compliance and that which goes beyond. However, if the latter field has been invaded, we are satisfied that it has been concerning matters which have been so firmly lodged in the informed judgment of the Commission and the District Court that neither this court nor any other reviewing court would be authorized to substitute its judgment therefor. Under such circumstances, any further review would be little more than an idle and useless ceremony. It is hardly within the range of possibility that appellants could benefit thereby. On the other hand, the delay occasioned would prove detrimental to the public interest and prolong the goal which has long been sought, that is, the final consummation of the Plan.

The appeals are dismissed.